UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASSAN IAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IAN CONNORS, et al.,<br><br>　　　　　Defendants. | Case No. 1:21-cv-01325-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING THE ACTION BE DISMISSED FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 1) |

　　　　Plaintiff Hassan Ian is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Currently before the Court is Plaintiff's complaint, filed on September 2, 2021.

**I.**

**SCREENING REQUIREMENT**

　　　　A complaint filed by any person proceeding *in forma pauperis* is subject to sua sponte dismissal, if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune

1  defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to
2  dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193
3  (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim).
4        The Court exercises its discretion to screen the plaintiff's complaint in this action to determine
5  if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)
6  seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).
7  In determining whether a complaint fails to state a claim, the Court uses the same pleading standard
8  used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain
9  statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Detailed
10 factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,
11 supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
12 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
13       In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as
14 true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).
15 Although a court must accept as true all factual allegations contained in a complaint, a court need not
16 accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts
17 that are 'merely consistent with' a defendant's liability...'stops short of the line between possibility
18 and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Therefore, the
19 complaint must contain sufficient factual content for the court to draw the reasonable conclusion that
20 the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

21                                **II.**
22                      **ALLEGATIONS IN COMPLAINT**
23       The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the
24 *sua sponte* screening requirement under 28 U.S.C. § 1915.
25       On October 25, 2019, and November 2, 2019, staff at the United States Penitentiary in Atwater
26 wrote a false incident report against Plaintiff for retaliatory reasons. On November 4, 2019, the
27 disciplinary hearing officer, C. Cervantes violated Plaintiff's due process rights by deceiving him into
28

waiving his rights. Without such deception, Plaintiff would have had the opportunity to present exculpatory witnesses and video evidence to provide the incident report was false.

The appeal response by Gene Beasley did not coincide with the facts and affirmations by the disciplinary hearing officer. Ian Connor inappropriately denied Plaintiff's appeal as untimely. As a result, Plaintiff lost twenty-seven days of good time credit, fifteen day security housing placement, ninety day loss of commissary, and thirty days of loss of personal property.

## III.

## DISCUSSION

### A. Bivens Action

Bivens v. Six Unknown Agents, created a remedy for violations of constitutional rights committed by federal officers acting in their individual capacities. Consejo de Desarrollo Economico de Mexicall, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir.2007) (citing Bivens, 403 U.S. 388)). Thus, to state a Bivens claims, a plaintiff must allege that persons acting under the color of federal law violated his constitutional rights. Martin v. Sias, 88 F.3d 774, 775 (9th Cir.1996) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991)).

An action under Bivens is therefore identical to one brought under 42 U.S.C. § 1983 except for the replacement of a state actor under § 1983 by a federal actor under Bivens. Id.

"In a suit against the United States, there cannot be a right to money damages without waiver of sovereign immunity." United States v. Testan, 424 U.S. 392, 400 (1976). The doctrine of sovereign immunity bars Bivens actions against the United States. Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir.1984). The Court therefore lacks subject matter jurisdiction over Plaintiffs' *Bivens* claims against the government. Moreover, "[i]t has long been the rule that the bar of sovereign immunity cannot be avoided by naming officers and employees of the United States as defendants." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir.1985) (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 688 (1949)). Claims against federal officials in their official capacities are essentially claims against the United States. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)). Thus, a *Bivens* action "can be maintained against a defendant in his or her individual action only, and not in his or her official

3

1  capacity." Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir.1996) (quoting Daly–Murphy, 837 F.2d 348
2  (9th Cir.1987)).

3  The Supreme Court has recently emphasized that "the Court has made clear that expanding the
4  Bivens remedy is now a 'disfavored' judicial activity," which is "in accord with the Court's observation
5  that it has 'consistently refused to extend Bivens to any new context or new category of defendants.' "
6  Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017) (first quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009);
7  then quoting Correctional Services Corp. v. Malesko, 534 U.S. 61, 68 (2001)).  Abbasi sets forth a two-
8  part test to determine whether a Bivens claim may proceed.  137 S. Ct. at 1859-60.  A district court must
9  first consider whether the claim presents a new context from previously established Bivens remedies,
10 and if so, it must then apply a "special factors" analysis to determine whether "special factors counsel
11 hesitation" in expanding Bivens in the absence of affirmative action by Congress.  Id. at 1857-60.

12 "If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme
13 Court], the context is new." Id. at 1859.  The Abbasi Court provided several non-exhaustive examples
14 of differences meaningful enough to make a given context a new one: "the rank of the officers involved;
15 the constitutional right at issue; the generality or specificity of the official action; the extent of judicial
16 guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory
17 or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the
18 Judiciary into the functioning of other branches; or the presence of potential special factors that previous
19 Bivens cases did not consider."  Id. at 1859-60.

20 To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth,
21 Fifth, and Eighth Amendments.  See Abbasi, 137 S. Ct. at 1860 (Supreme Court has approved three
22 Bivens claims in the past); Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403
23 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v.
24 Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S.
25 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause). The Supreme Court has never
26 implied a Bivens action under any clause of the First Amendment.  See Reichle v. Howards, 566 U.S.
27 658 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."); Bush v. Lucas,
28 462 U.S. 367 (1983) (declining to extend Bivens to a First Amendment claim); but see Ashcroft v. Iqbal,

4

556 U.S. 662, 675 (2009) ("we have declined to extend Bivens to a claim sounding in the First Amendment . . . Petitioners do not press this argument, however, so we assume, without deciding, that respondent's First Amendment claim is actionable under Bivens.").

At step one, courts must determine whether a claim presents a "new Bivens context." Abbasi, 137 S. Ct. at 1859. If courts answer that question in the affirmative, the analysis moves to step two, which requires a determination of whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 1857 (citation omitted). If such factors exist, courts should not extend "a Bivens-type remedy" to the claims at issue. Id. at 1859.

With regard to the first step of the test, the Court indicated that "even a modest extension is still an extension," and even if the differences are "perhaps small, at least in practical terms," the "new context inquiry is easily satisfied." Abbasi, 137 S. Ct. at 1864, 1865 (emphasis added). Additionally, the context may be different "[e]ven though the right and the mechanism of injury [are] the same...." Thus, a single meaningful difference in "almost parallel circumstances" is sufficient to satisfy the first step of the Abbasi test. Id. at 1860 (finding contexts to be different where two cases both involved a claim for failure to provide adequate medical treatment under the Eighth Amendment, but one case involved federal prison officials and the other involved a private prison operator).

With regard to step two of the test—i.e., whether there are special factors counseling hesitation—the Court instructed that:

> the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.

Id. at 1857–1858 (emphasis added). The Court reframed the "special factors" inquiry as a question of " 'who should decide' whether to provide for a damages remedy, Congress or the courts?" Id. at 1857. The Court instructed that the "answer will most often be Congress." Id. Notably, courts do not need to reach a definitive answer as to whether the Judiciary is well suited to consider whether to allow a damages action—a mere hesitation is sufficient for a court to find that it should not allow such a remedy.

///

In applying step two, the Court indicated that, when lower courts conduct the "special factors" analysis, they should consider whether there are "alternative remedies available or other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy...." Id. at 1865 (emphasis added) (internal quotation marks omitted). Additionally, the Court analyzed factors such as whether a claim implicates a governmental policy such that it would entail "inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged," and whether allowing a claim would "interfere in an intrusive way with sensitive functions of the Executive Branch." Id. at 1860–61. Thus, step two of the Abbasi test creates a very low bar. When a case presents a "new Bivens context," there will "most often" be factors that will cause a court to hesitate before allowing a damages action. As a consequence, the Supreme Court's decision in Abbasi is "close to limiting the Bivens cause of action to the circumstances of Bivens, Davis, and Carlson, as it will be very difficult for any case not presenting those facts to survive [the Abbasi] test." See Boudette v. Sanders, Case No. 18-cv-02420-CMA-MEH, 2019 WL 3935168, at * 7 (D. Colo. Aug. 19, 2019) (citing Constitutional Remedies—Bivens Actions—Ziglar v. Abbasi, 131 Harv. L. Rev. 313, 318 (2017) (citing Larry Alexander, Constrained by Precedent, 63 S. Cal. L Rev. I, 20 (1989)).

The Supreme Court has never recognized a Bivens remedy under the First Amendment and the Ninth Circuit has also refused to extend a Bivens remedy to a claim under the First Amendment. Reichle v. Howards, 566 U.S. 658, 663 n. 4 (2012); Vega v. United States, 881 F.3d 1146, 1153 (9th Cir. 2018); Lee v. Matevousian, 2018 WL 5603593, at *3-4 (E.D. Cal. Oct. 26, 2018) (declining to infer Bivens remedy for First Amendment retaliation and denial of access to courts claims); Bush v. Lucas, 462 U.S. 367 (1983) (the Court refused to extend Bivens to allow a federal employee to sue his supervisor for retaliatory demotion under the First Amendment.).

In addition, the Ninth Circuit has held that a Fifth Amendment procedural due process claim arising out of a prison disciplinary process is a "new context" under Abbasi. See Vega, 881 F.3d at 1153. Because inmates have administrative procedures as well as state-law claims with which to challenge disciplinary sanctions, the Ninth Circuit concluded that *Bivens* should not be expanded in this context. Id. at 1153-55. Other courts have likewise declined to find an implied *Bivens* cause of

action for Fifth Amendment due process. See, e.g., Hunt v. Matevousian, 336 F.Supp.3d 1159, 1169 (E.D. Cal. 2018). Both the existence of alternative remedial processes and other special factors counselling hesitation weigh against extending the Bivens remedy to Plaintiff's First and Fifth Amendments claims proposed in Plaintiff's case. First, federal prisoners have numerous alternative remedies available to them, including the Federal Tort Claims Act (FTCA) and the Bureau of Prison's administrative grievance process. See 28 U.S.C. §§ 1346(b)(1), 2674 (allowing an inmate to seek money damages for personal injuries and property claims arising out of a federal employee's negligence or wrongful conduct); 31 U.S.C. § 3724(a) (allowing the Attorney General to settle claims for personal injuries and damages or lost personal property caused by federal law enforcement); 28 C.F.R. § 542.10(a) (establishing administrative-grievance procedure for "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"). The Ninth Circuit and district courts have recognized the adequacy of these alternative remedial schemes with regard to prisoners' First Amendment claims. See Buenrostro v. Fajardo, 770 F. App'x 807, 808 (9th Cir. 2019) (declining to extend Bivens remedy for a prisoner allegedly punished for pursuing grievances and litigation); Vega v. United States, 881 F.3d 1146, 1153-54 (9th Cir. 2018) (declining to expand Bivens to "Fifth Amendment procedural due process claims arising out of a prison disciplinary process"); Sutter v. United States, No. 17-07245-SVW (DFM), 2019 WL 1841905, at *7 (C.D. Cal. Mar. 12, 2019) (declining to extend Bivens to a Fifth Amendment procedural due process claim arising out of allegations that inmate was punished for an infraction he did not commit); Thomas v. Matevousian, No. 17-cv-01592-AWI-GSA-PC, 2018 WL 5099763, at *7-8 (E.D. Cal. Oct. 18, 2018) (declining to extend Bivens to a Fifth Amendment procedural due process claim arising out of allegations that inmate was "placed in the SHU without a finding of probable cause and detained in the SHU without a hearing"). Therefore, pursuant to Abbasi, the Court should not "extend a Bivens-type remedy" to Plaintiff's retaliation and due process claims. Abbasi, 137 S.Ct. at 1859.

Concerning separation of powers and other "special factors" also counsel hesitation. Tellingly, Congress "addressed the question of prisoners' remedies in the Prison Litigation Reform Act of 1995" and omitted a damages remedy, Buenrostro, 770 F. App'x at 808, which suggests that "Congress might doubt the efficacy or necessity of a damages remedy" against federal jailers, Abbasi, 137 S. Ct. at

1858. But insofar as Congress, through the FTCA and § 1983, has not provided a remedy to federal prisoners, the separation of powers commands that this court must respect that silence. See Oliva v. Nivar, 973 F.3d 438, 444 (5th Cir. 2020) (the "silence of Congress" is a special factor counseling hesitation) (quoting Abbasi, 137 S. Ct. at 1862). Especially because, as the FTCA and § 1983 demonstrate, "Congress ... knows how to create a cause of action to recover damages for constitutional violations when it wishes to do so." Hernandez v. Mesa, ––– U.S. ––––, 140 S. Ct. 735, 752, 206 L.Ed.2d 29 (2020). Plaintiff's claims implicate significant separation of powers concerns vis-à-vis prison administration and implying a new Bivens remedy for such claims would undoubtedly impose a large burden on the judiciary and prison officials. Cox v. United States, 2:17-cv-02349-CJC-KES, 2019 WL 5580966, at *8 (C.D. Cal. Aug. 30, 2019), report and recommendation adopted, 2019 WL 5579533 (C.D. Cal. Oct. 29, 2019). Recognizing that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions," Congress and the courts have long accorded "[p]rison administrators ... wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); see also Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 326 (2012) ("The difficulties of operating a detention center must not be underestimated by the courts."). Because separation of powers principles warrant judicial deference to the Executive Branch officials in prison management, this special factor also counsels hesitation.

Accordingly, the Court should decline to imply a new Bivens remedy for plaintiff's due process and retaliation claims. The Court finds special factors counsel hesitation in this context and recommends declining to find implied Bivens claims. Consequently, Plaintiff has failed to state a cognizable claim. Since this is a deficiency that cannot be cured by amendment, the Court concludes that granting leave to amend would be futile.

## IV.

## ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of the Court randomly assign a district judge to this action.

Further, it is HEREBY RECOMMENDED that Plaintiff's complaint be dismissed without leave to amend for failure to state a claim.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14)** days after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 17, 2021**

UNITED STATES MAGISTRATE JUDGE