IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HASSAN ALI, | ) | |
|     Petitioner, | ) | Civil Action No. 7:22cv00200 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| J. C. STREEVAL, | ) |     United States District Judge |
|     Respondent. | ) | |

**MEMORANDUM OPINION**

Hassan Ali, a federal prisoner proceeding *pro se*, has filed this petition for a writ of habeas corpus, pursuant to 28 U. S. C. § 2241. In it, he alleges that he was denied due process during prison disciplinary proceedings, which resulted in a conviction and the loss of earned good-time credits, among other penalties. Ali originally filed his claim as a civil rights complaint in the United States District Court for the Eastern District of California, but that court construed it as a § 2241 petition and transferred it here. (Dkt. Nos. 9, 19.) After its transfer, this court severed his original petition, which challenged two separate disciplinary convictions, into two cases. (Dkt. No. 28.) This case involves Ali's challenge to Incident Report (IR) No. 3320524, which alleged that on September 14, 2019, Ali committed the prohibited act of fighting in violation of Bureau of Prisons (BOP) discipline code 201.

Respondent has filed a motion to dismiss the petition, or, in the alternative, for summary judgment, to which Ali has responded. (Dkt. Nos. 24, 27.) For the reasons discussed in more detail below, the court will grant respondent's motion for summary judgment and deny Ali's § 2241 petition.

I.  BACKGROUND

**A.  BOP's Inmate Discipline Process**

When BOP staff have a reasonable belief that an inmate has violated a BOP regulation, staff prepare an incident report and provide the inmate with a written copy of the charges against him, ordinarily within twenty-four hours of staff becoming aware of the inmate's involvement. 28 C.F.R. § 541.5(a).  An investigating officer informs the inmate of the charges and asks for a statement from the inmate, but the officer also advises him of his right to remain silent.  *Id.* § 541.5(b).

At that time, an inmate may give an explanation of the incident, request that witnesses be interviewed, or request that certain evidence be obtained and reviewed.  *Id.*  If an inmate requests potentially exculpatory evidence, such as video surveillance, the investigating employee must make every effort to review and preserve that evidence.  Any comments are recorded on the IR under the "Investigation" section.  (Carrie Cervantes Decl. ¶ 8, Ex. 1 to Resp.'s Mem. Supp. Mot. Summ. J., Dkt. No. 25-1.)

Once the investigation is complete, a Unit Discipline Committee (UDC) reviews the incident report, usually within five days of its issuance.  28 C.F.R. § 541.7.  The inmate is permitted to appear in person or electronically at the UDC review (except in limited circumstances), and he is allowed to make a statement or present documentary evidence on his own behalf.  *Id.*  (*See also* Cervantes Decl. ¶ 9.)  Any such statement or evidence is noted in the UDC portion of the IR.  (Cervantes Decl. ¶ 9.)  The UDC makes a decision based on at least some facts, or, in the case of conflicting evidence, based on the greater weight of the evidence. 28 C.F.R. § 541.7(e).  The UDC can find the inmate committed the prohibited act (or a similar prohibited act), find he did not commit it, or refer the case to the Disciplinary Hearing Officer

2

(DHO) for further proceedings. *Id.* § 541.7(a). When the violation is serious or warrants consideration of non-minor sanctions, the UDC generally refers the charges to the DHO. *Id.*

If a UDC refers for a DHO hearing, it advises the inmate of his rights and gives written notice of them, which is then signed by the inmate. When a hearing is held before a DHO, the inmate has the right to call witnesses and to present documentary evidence. (Cervantes Decl. ¶ 10.) An inmate may request a staff representative at the hearing, who can assist the inmate in understanding the charges, speaking with and scheduling witnesses, obtaining written statements, and otherwise preparing evidence to present. 28 C.F.R. § 541.8.

At the hearing itself, the inmate may present his own statement and documentary evidence, and he can present witnesses as long as the presence of such witnesses would not jeopardize institutional security or result only in the introduction of repetitive evidence. *Id.* A DHO does not conduct his or her own investigation, however, and so only considers evidence gathered by the investigating staff member or presented by the inmate. (*See* Cervantes Decl. ¶ 11.) As with the UDC, the DHO makes a decision based on at least some facts, or, in the case of conflicting evidence, based on the greater weight of the evidence. (*Id.* ¶ 12.) The DHO can determine the inmate committed the act as charged or a similar prohibited act, find the inmate did not commit the act as charged, or refer the IR back for further investigation and review. 28 C.F.R. § 541.8(a).

The DHO prepares a record of the proceedings, although it need not be verbatim. The record also includes the DHO's decisions and the reasons for the decision. *Id.* The DHO then gives the inmate a written copy of the decisions and disposition, ordinarily within 15 days of the DHO's decision. *Id.* (*See also* Cervantes Decl. ¶ 14.)

### B. The Offense and Investigation

Ali is currently incarcerated at the United States Penitentiary (USP) in Lee County, Virginia. The incidents giving rise to the petition occurred when he was incarcerated at USP Atwater, in California.

In IR 3320524, Ali was charged with fighting with another inmate referred to by respondent as "Inmate A," and the offense occurred on September 14, 2019. Although the incident was unwitnessed when it occurred, the IR states that staff later became aware of the incident and investigated. Pre-recorded video surveillance reflected a physical altercation that occurred in Unit 2B in front of cell 107 and 108. The video depicted Ali and Inmate A striking each other in a stabbing motion, and the altercation lasted approximately one minute. The IR also describes what each inmate was wearing. (IR § 11, Cervantes Decl., Attach. A, Dkt. No. 25-1, at 10–11.) Staff member D. Wildes, who prepared the IR, stated that staff positively identified the two inmates "utilizing the pre-recorded video surveillance zoom in feature, BOP Ware, and Sentry." (*Id.*) At the conclusion of the investigation on October 25, 2019, the IR was prepared and provided to Ali.

The delay between the incident and the IR being issued was the result of the investigation being conducted. Because the UDC hearing was not conducted within five work days of the date of incident, however, an Advisement of Delay was completed and signed by the Warden on the same day the IR issued, and Ali received a copy of it. (DHO Report at 2, Dkt. No. 25-1, at 18; Advisement of Delay Form, Cervantes Decl., Attach. E, Dkt. No. 25-1, at 22.)

During the investigation into the fighting incident, Ali declined the opportunity to make a statement, and he did not provide any mitigating or extenuating evidence concerning the incident. (*Id.* §§ 24–25.)

4

## C. The Disciplinary Proceedings Related to IR 3320524

After the IR was issued and provided to Ali, the UDC held its hearing on October 27, 2019. (IR § 21.) At the hearing, Ali made the statement that he "was not involved in a physical alteration [sic] with [Inmate A]." (*Id.* § 17.) The UDC referred the IR to the DHO for further hearing. (*Id.* § 20.) Following the UDC hearing, Ali was given a form advising him of his rights with regard to the disciplinary hearing, which he signed. (Inmate Rights at Discipline Hearing, Cervantes Decl., Attach. B, Dkt. No. 25-1, at 13.) He also was given a form notifying him of the date and time of the hearing. On that form, Ali requested a staff representative, and was assigned K. Kendall as his staff representative.[1] He also requested Inmate A as a witness. (Notice of Discipline Hearing Before the DHO, Cervantes Decl., Attach. C., Dkt. No. 25-1, at 15.)

The hearing officer, Carrie Cervantes, has submitted an affidavit in this case that provides general background information and largely echoes what is in the DHO report. At the DHO hearing, Ali presented written statements denying the charge and also provided exculpatory arguments. (DHO Rep. § III, Cervantes Decl., Attach. D, Dkt. No. 25-1, at 17–20.) He also requested that the other inmate involved in the altercation appear as a witness, but that request was denied for security reasons. Specifically, it was denied because that inmate and Ali were under orders to be kept separate.

Ali's staff representative reviewed the video of the incident at Ali's request, appeared at the hearing via telephone conference call, and made a statement at the hearing. The representative conveyed that the video showed "Ali making lunging attack moves towards his cell mate. Inmate Ali was the aggressor in this case. He kept lunging at his cellie, who was

---

[1] Ali had originally requested a different staff member, but that member could not be a representative because he or she was an alternate DHO. (DHO Rep. § V, Cervantes Decl., Attach. D, Dkt. No. 25-1, at 19.)

5

trying to get away with stabbing movements." (*Id.* § II.)[2] The DHO considered Ali's written statements, as well as his other arguments, his representative's statement (which actually supported the charge), and the IR and investigation report, which reflected injuries to both Ali and Inmate A consistent with an altercation. (*See id.* § V.). Based on the evidence, the DHO found that Ali had committed the prohibited act of fighting. The DHO imposed various sanctions, including the loss of 27 days of earned good conduct time, 15 days of disciplinary segregation, 15 additional days of disciplinary segregation suspended for 180 days with clear conduct, a loss of commissary privileges for 90 days, an impound of personal property for 30 days, and a monetary fine of $20.00. (*Id.* § VI.)

## II.  DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[3] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for

---

[2] The DHO explained that the staff representative erroneously believed that Ali and Inmate A were cellmates.

[3] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

## B. Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). It is well established that the loss of earned good time credits, which was part of Ali's penalty for IR 3320524, is an interest sufficient to invoke the protections of due process. *Wolff v. McDonnell*, 418 U.S. 539 (1974). But respondent contends that Ali was not denied due process during his hearing or the appeal process. (*See generally* Mem. Supp. Mot. Summ. J., Dkt., No. 25.) The court agrees.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Instead, the inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67)).

Ali's petition is not entirely clear as to what his specific complaints are, but it appears

7

that he is arguing his due process rights were violated because he was not permitted to call Inmate A as a witness and because his staff representative violated his rights in some unspecified manner. In his sworn response to the summary judgment motion, he clarifies that the staff representative "did not conduct the investigation" Ali had requested. (Opp'n to Resp.'s Mot. Summ. J. 1, Dkt. No. 27.) Specifically, he claims that she reviewed footage without audio and failed to obtain a Statement from Inmate A, as he says he had requested. He asserts that the written statement would have refuted that he and Inmate A were "fighting" and would have supported Ali's own testimony that they were merely engaging in "horseplay." (*Id.* at 3.) He also takes issue with her description about what the video depicted and the fact that she referred to him as the "aggressor." (*Id.* at 1–2.) Additionally, the court construes his petition as challenging the delay between the incident and the preparation of the IR and UDC hearing.

   **1. Sufficiency of the evidence**

First of all, to the extent Ali is challenging the sufficiency of the evidence against him, the court easily concludes that there was—at a minimum—"some evidence" that he had fought with Inmate A. Thus, there was no violation in terms of substantive due process. *Hill*, 472 U.S. at 454, 456 (holding that due process was satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record" and explaining that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact").

   **2. Failure to have Inmate A testify live or via a written statement**

With regard to his procedural due process challenges, they are governed by the analysis described in *Lennear v. Wilson*, 937 F.3d 257, 276–77 (4th Cir. 2019) (explaining that the "some evidence" standard of *Hill* is inapplicable when a court is considering "whether prison officials'

failure to disclose or consider testimonial or documentary [evidence] was harmless"). In particular, if evidence was improperly denied, the court must determine whether the excluded evidence could have "aided the inmate's defense*." Id.* at 277.

Applying that standard and considering all of the record evidence, the court concludes that there is no evidence from which a reasonable factfinder could find that that the failure to obtain Inmate A's testimony—either live or through a written statement—was a due process violation. Indeed, it is well established that "[p]rison officials must have the necessary discretion to keep [a disciplinary] hearing within reasonable limits . . . [by] refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. The Supreme Court expressly "stop[ped] short of imposing a more demanding rule with respect to witnesses and documents." *Id.* at 567; *see Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004) ("hearing officers . . . may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration").

In *Lennear*, the Fourth Circuit recognized that prisoners have a qualified right to present a witnesses and documentary evidence. It explained that prison officials may restrict either access to certain evidence only by identifying a valid penological reason for the restriction, and even if there are such valid reasons, then alternatives (such as providing a summary of the evidence) should be considered. 937 F.3d at 271–72. Here, the DHO fully explained why Inmate A could not testify at the hearing—he and Ali were required to be kept separate and at different facilities, if possible. That security justification was legitimate.

As to whether or not Inmate A should have been required to give a statement, or whether

9

Ali's staff representative should have obtained one from him, there is a dispute of fact as to whether Ali even requested one. In the DHO Report, there is no mention of Ali submitting any questions for Inmate A, requesting that the DHO seek a written statement from Inmate A, or requesting that the staff representative attempt to obtain a written statement from Inmate A. From this, respondent argues that Ali "cannot establish his right to call witnesses was impeded as he did not seek to assert the right during the DHO process." (Mem. Supp. Mot. Summ. J. 14, Dkt. No. 25.) But Ali has offered sworn testimony that he asked his staff representative to obtain a written statement from Inmate A, if Inmate A could not testify live at the hearing.

For purposes of summary judgment, then, the court must credit Ali's sworn assertion that he asked his representative for such a statement. Even so, Ali has failed to establish a due process violation because any error was harmless. Put differently, Ali cannot show—as he must—that Inmate A's testimony would have "aided" his defense. *See Lennear*, 937 F.3d at 277 (explaining that in order to show a procedural due process violation stemming from evidence not being permitted or considered, a petitioner must show that the evidence could have "aided the [inmate's] defense"). Ali claims that Inmate A would have also told the DHO that they were only engaged in "horseplay." But even if Inmate A had provided a statement to that effect, it is unlikely that the DHO would have reached a different conclusion. Indeed, the incentives for Inmate A to also claim he was not engaged in "fighting" were substantial, as it appears that he also faced disciplinary proceedings for fighting. Also, as the Fourth Circuit has explained in addressing the denial of witnesses in disciplinary proceedings, inmate witnesses often testify under threat of coercion and face the possibility of retaliation if they do not testify in the accused inmate's favor. Indeed, "[r]etaliation is much more than a theoretical possibility for inmates who are called as witnesses in disciplinary hearings . . . ; it is a very real danger." *Brown v. Braxton*,

10

373 F.3d 501, 506 (4th Cir. 2004) (citations omitted). These factors would have significantly undercut Inmate A's credibility.

Moreover, the video evidence of the incident, as described by both the investigator and Ali's staff representative, as well as the reported injuries to both Ali and Inmate A, are consistent with fighting. The DHO fully considered but rejected Ali's "horseplay" explanation, reasoning that "the video review (by both the reporting officer and the staff representative) showed that Ali was actively engaged in the physical altercation, which meets the elements of offense for Fighting." (DHO Report § V, Dkt. No. 25-1, at 19.) Accordingly, no reasonable jury could conclude that the testimony of Inmate A would have "aided" Ali's offense or caused the DHO to reach a different conclusion. As a result, Ali cannot show a due process violation with regard to the failure to call Inmate A as a witness.

### 3. Staff Representative's alleged failures and adverse statement

Ali also complains about his staff representative's failures generally. But such failures, including a failure to conduct the investigation sought by petitioner, do not give rise to a due process violation in the typical case. This is true because an ineffective assistance claim cannot lie based on the actions of a staff representative, where due process does not even entitle a petitioner to such a representative. *Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011) (noting that "due process principles clearly did not" require the assistance of a staff representative and thus petitioner "has no viable due process claim about the quality of assistance that he received"); *Figueroa v. Vose*, 57 F.3d 1061, 1995 WL 352819, at *1 n.4 (1st Cir. 1995) (unpublished table disposition) ("[B]ecause there is no right to counsel at prison disciplinary hearings, an inmate has no cause of action for a staff assistant's allegedly ineffective assistance."); *see also Macia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007) (holding that

11

the lack of a staff representative did not violate due process where the inmate is not illiterate and the issues were not complex). Based on this authority, the court concludes that no due process claim can lie based on what the staff representative did or failed to do to assist Ali.

With regard specifically to the staff representative's own description of the event based on her review of the video, Ali had asked that the staff representative review the video, which she did, and she described it to the DHO. The fact that Ali disagrees with his staff representative's characterization of the video does not mean that his due process rights were violated. He has no entitlement to a staff representative who will review a video and make false statements—or statements contrary to his or her conclusions--about what the video reflects. *See* 28 C.F.R. § 541.8(d)(1) (discussing the role of staff representative). Put differently, Ali was not entitled to an exculpatory (and false, in the staff representative's view) description of the videotape. Thus, the best result Ali could have hoped for is that the staff representative would have said nothing.

In a similar case, where a petitioner argued his staff representative made statements adverse to him, another district court "assum[ed] arguendo" that the adverse statements violated due process, but nonetheless held that the harmless error standard applied, and the error in the case before it was harmless. *Lacey v. Ortiz*, No. 18-11176(RMB), 2019 WL 2710086, at *7 (D.N.J. June 22, 2019). The same is true here. That is, even if the staff representative's statement was an error, it was harmless. If the staff representative had not made the inculpatory statements, the DHO still would have had the investigation from the IR to consider (which included a similar description of the incident). Notably, moreover, the DHO Report did not appear to place any weight on the representative's characterization of Ali as the "aggressor," which was really the only difference between the description of the video in the incident report

12

and the staff representative's description.

Further, the DHO still had before it Ali's "horseplay" defense but rejected it. And that rejection did not appear to be based on the staff representative statement in whole or in part. Thus, there is nothing to support that, absent the statement from the staff representative, the result of the hearing would have been different. Accordingly, even if it was an error, it was harmless.

### 4. Delay in preparation of Incident Report/UDC Hearing

Although Ali's petition does not directly challenge the delay between the incident and the preparation of the IR or the delay between the incident and the UCD hearing, the petition incorporates attached documents which argued that the delay violated his due process rights, such as his written statement to the DHO and statements on appeal from his disciplinary conviction. (Compl., Attachs. B4, B10, Dkt. No. 1, at 25, 31.) The undisputed evidence, however, does not show a due process violation as a result of this delay. A failure by the BOP to follow its own technical rules or rules regarding timing does not, standing alone, violate due process, as numerous courts have held. *See, e.g.*, *Lytle v. Warden FCI-Bennettsville*, No. CV 5:16-2277-TMC, 2018 WL 4178448, at *3 (D.S.C. Aug. 31, 2018) (explaining that inmate did not show a due process violation as to his allegations that certain time requirements were not met or as to his complaint that respondent did not follow the prison's internal policies); *Perotti v. Perdue*, No. 1:14CV112, 2015 WL 5725810, at *4 (N.D.W. Va. Sept. 30, 2015) (reasoning that, aside from *Wolff*'s requirement that the petition be given notice of the hearing at least twenty-four hours beforehand, "no further time requirements, including limitations on the time between incidents and hearings, are necessary to comply with due process"); *Scott v. Zych*, No. 7:11-cv-00187, 2011 WL 6398022, at *3 (W.D. Va. Dec. 20, 2011) (finding no due process violation

where petitioner alleged there was a delay in holding the DHO hearing); *Kokoski v. Small*, No. 07-0145, 2008 WL 3200811, at *19 (S.D.W. Va. Aug. 5, 2008) (finding no federal due process violation where BOP failed "to conduct the hearings in strict accordance with the timelines set forth in the regulations").

This is particularly true where, as here, there is no allegation of prejudice from the delay. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1422 (M.D. Pa. 1994) (expressing reluctance to "overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate"); *McClure v. Mass*, No. 88-4171, 1989 WL 107817, at *2 (9th Cir. June 28, 1989) (requiring showing of actual prejudice to state a due process claim based on a violation of administrative regulations). Thus, any delay in the preparation of the IR did not violate Ali's constitutional due process rights.

In sum, the court concludes that all of Ali's rights under *Wolff* were met, and the undisputed evidence shows that there were no due process violations warranting habeas relief. Respondent's motion for summary judgment must be granted, and the petition denied.

### III.  CONCLUSION

For the reasons stated, the court concludes that respondent is entitled to summary judgment as to Ali's due process claims. Accordingly, the court will grant the motion for summary judgment and deny Ali's § 2241 petition. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

Entered: February 7, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge